## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **ISOURCELOANS LLC,** | § | |
| | § | |
| Plaintiff, | § | Civil Action No. _____ |
| | § | |
| v. | § | |
| | § | **(JURY TRIAL DEMANDED)** |
| **CALIBER HOME LOANS, INC.,** and **CALIBER FUNDING LLC,** | § § § | |
| | § | |
| Defendants. | § § § | |

## COMPLAINT WITH JURY DEMAND

Plaintiff iSourceLoans LLC ("iSource"), for its Complaint against Defendants Caliber Home Loans, Inc. and Caliber Funding LLC (collectively "Caliber" or "Defendant"), alleges as follows:

### I.   THE PARTIES

1. iSource is a Delaware limited liability corporation with a principal place of business located at 1875 Century Park East, Suite 700, Los Angeles, California 90067.

2. Upon information and belief, Caliber Home Loans, Inc. is a corporation organized and existing under the laws of Delaware, with a place of business located at 2591 Dallas Parkway, Suite 403, Frisco, Texas 75034. Caliber Home Loans, Inc. can be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Upon information and belief, Caliber Funding LLC is a corporation organized and existing under the laws of Delaware, with a place of business located at 2591 Dallas Parkway, Suite 403, Frisco, Texas 75034. On August 1, 2013, Caliber Funding LLC merged into Caliber

Home Loans, Inc.  Caliber Funding LLC can be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II.      JURISDICTION AND VENUE

4. This Court has exclusive jurisdiction of this action for patent infringement pursuant to 28 U.S.C. § 1338(a).

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Upon information and belief, Caliber has minimum contacts with this judicial district such that this forum is a fair and reasonable one.  Caliber has transacted and/or, at the time of the filing of this Complaint, is transacting business and maintains a branch office within the Eastern District of Texas. Further, upon information and belief, Caliber has committed acts of patent infringement complained of herein within the Eastern District of Texas, including offering a web-based program for managing several aspects of mortgage loan services in the district.  For these reasons, personal jurisdiction exists over Caliber.

7. Venue over this action is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## III.     THE TECHNOLOGY

8. At the center of this dispute is technology related to mortgage loans and a method and system for a loan broker to enable real estate agents, mortgage bankers, mortgage brokers, banks, institutions, certified public accountants (CPA), attorneys, home builders, direct consumers and other mortgage and non-mortgage related persons to originate a real estate loan or mortgage transaction for potential home buyers or owners that is compliant with certain federal and state regulations, including the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq.* ("RESPA").

9. Many individuals are involved in the process to purchase or finance real property. A real estate agent helps a buyer find and negotiate the purchase of a property from a seller. If the buyer will not pay cash for the purchase then the buyer also becomes the borrower in the transaction. The borrower may directly contact a lender to obtain a mortgage loan. More often though, a mortgage loan is obtained through a mortgage broker or with the help of a loan originator. A loan originator works with the borrower to gather and organize the information (such as the borrower's financial information) to obtain a loan. Mortgage brokers or mortgage originators may search many lenders to find loan terms that best fit a borrower's need. In some instances, the mortgage broker may also be a loan originator.

10. Once the borrower decides on the type of loan they wish to obtain, the mortgage broker or others may use the information gathered from the borrower to originate the loan. The mortgage broker or others may be eligible to receive some form of compensation for the loan origination for providing these services, but only if sufficient services were provided under state and/or federal regulations. The value of the dollars to be transferred for such compensation may be based on the amount of the loan and/or may be determined by using a standard fee calculation or some other metric.

11. At present, almost all loan applications are submitted to an automated underwriting system (AUS). Lending institutions may have their own internal underwriting systems or may use third party underwriting systems, such as Freddie Mac Loan Prospector, Fannie Mae Desktop Originator, or Fannie Mae Desktop Underwriter. An underwriter (or AUS) uses data from the loan application to determine if the borrower qualifies for the loan. The underwriter (or AUS) may request additional information about either the property or the borrower. The underwriter (or AUS) may issue an approval, refer with caution, set conditions on

the approval, declare that the loan is ineligible for delivery, or in the case of an AUS, refer the loan application to a human underwriter.

12. If the borrower is approved for the loan (or even if the loan is declined), the lender will provide the borrower with certain disclosures required by law, such as a Good Faith Estimate.

13. Upon AUS approval or if the originator must submit the application to a human underwriter, the originator sends the complete loan application package to the lender. The lender verifies the submitted information and requests additional documentation when necessary.

14. When the loan transaction is fully approved, the lender will cause the closing documents to be prepared and again make certain disclosures to the borrower as required by law. The borrower accepts the loan by executing the closing documents.

15. Prior to the enactment of RESPA in 1974, some companies and individuals were involved in deceptive practices that artificially inflated costs associated with mortgage loans. RESPA was apparently created to eliminate illegal referral fees, among other things, by requiring agents to perform non-duplicative services necessary for completion of a contemplated real estate transaction in order to receive an origination fee.  Thus, RESPA has been interpreted to regulate when sufficient services have been performed to justify payment of an origination fee to one or more individuals or entities.

16. RESPA does not define who is eligible to originate a loan.  Rather, RESPA has been interpreted to regulate what services must be performed in order to legally receive the origination fee.

17. Mr. Russell McDonald ("Russ") has been in the real estate business since 1976, working as a buyer, seller, lender, borrower and broker for various institutions.  In 1990, he started his own mortgage broker company, Wymac Capital, Inc. ("Wymac"), with his partner

Darrell Wiley.  In 1992, Russ's son, Mr. Russell McDonald II ("Russell"), became a real estate loan officer with Wymac.  Russell was disappointed with the level of technology available in the industry and, along with his father, Russ, was always trying to create different software solutions to streamline the mortgage originating, underwriting and issuance workflows and processes.

18.   Russ, Russell and Mr. Wiley formed Sourcetec, Inc. ("Sourcetec") in 1994 to first create and then market software for the mortgage lending and equipment leasing industries.  As is relevant here, Russ and Russell conceived of and developed specialized computer systems and software that allowed non-mortgage professionals to be compensated for loan originations by complying with complicated real estate finance regulations without needing to understand or even be aware of the existence of such regulations.  These regulations, such as RESPA, required a non-mortgage professional to perform a requisite number of loan origination steps to be able to receive compensation for a loan origination.  These specialized computer systems and software forced compliance with real estate finance regulations by requiring a non-mortgage professional to perform the requisite number of loan origination steps to be able to receive compensation for the origination. Those same specialized computer systems and software also improved the loan processing efficiency of knowledgeable loan officers.  It was this work that led to filing of the applications for and issuance of U.S. Patent No. 7,315,841 ("the '841 Patent"), U.S. Patent No. 7,340,435 ("the '435 Patent") and U.S. Patent No. 8,527,402 ("the '402 Patent").  The combinations practiced in the claims of these patents were neither routine nor conventional at the time of filing of these patent applications. Indeed, at the time, no one had used a specialized computer system to require a non-mortgage professional to perform the requisite number of loan origination steps to remain RESPA complaint, and therefore be entitled to compensation.

19.   Sourcetec was the original assignee of these patents and called the new software Cypher™. Cypher allows not only mortgage brokers, but also non-mortgage professionals such

as real estate agents, real estate brokers, CPAs, financial planners, credit unions, banks, and builders, to originate loans and foster compliance with RESPA and other laws and regulations. Since its market introduction in 1998, Cypher has been used by over 400 individuals or entities to originate more than 8,000 loans.

20. iSource is now the sole owner of the '841 Patent, the '435 Patent and the '402 Patent by assignments, and has the exclusive right to enforce and collect past, present, and future damages for infringement of the '841 Patent, the '435 Patent and the '402 Patent during all relevant time periods.

## IV. THE PATENTS

21. On January 1, 2008, the '841 Patent was duly and legally issued for "Mortgage Loan and Financial Services Data Processing System." A true and correct copy of the '841 Patent is attached as Exhibit A.

22. On March 4, 2008, the '435 Patent was duly and legally issued for a "Mortgage Loan Data Processing System and Method for a Loan Broker." A true and correct copy of the '435 Patent is attached as Exhibit B.

23. On September 3, 2013, the '402 Patent was duly and legally issued for a "Mortgage Loan Data Processing System and Method for a Loan Broker." A true and correct copy of the '402 Patent is attached as Exhibit C.

24. The '841 Patent, '435 Patent, and '402 Patent are directed to patentable subject matter under 35 U.S.C. § 101.

25. The '841 Patent, '435 Patent, and '402 Patent and the claims therein are presumed patent eligible, valid, and enforceable pursuant to 35 U.S.C. § 282.

26. The '841 Patent generally relates to a specialized computer system and method for managing the origination of a mortgage loan. The Abstract of the '841 Patent provides:

> The present invention includes a data processing system and method for managing the origination of a mortgage loan by a loan originator in coordination with a loan broker for a loan customer. The loan originator is not the loan broker. The loan originator provides services necessary for the origination of the mortgage loan and not duplicative of services provided by the loan broker.

27. Without limitation as to the claims to be asserted in this action, and for exemplary purposes only, Independent Claim 1 of the '841 Patent states:

> 1. A data processing system, comprising:
> means for managing the origination of a mortgage loan by a loan originator in coordination with a loan broker distinct from the loan originator for a loan customer distinct from the loan originator using already possessed data for the loan customer, comprising:
> means for the loan originator providing services necessary for the origination of the mortgage loan and not duplicative of services provided by the loan broker, further comprising:
> means for collecting data regarding the loan customer not previously possessed by the loan originator;
> means for generating a loan application for the loan customer regarding the not previously possessed data and the already possessed data regarding the loan customer;
> means for generating disclosure documents regarding the mortgage loan and the already possessed data and the not previously possessed data regarding the loan customer; and means for transferring the loan application to the loan broker; and
> means for verifying the services are legally compliant with the guidelines of federal and state law.

28. The '435 Patent generally relates to a specialized computer system and method for a loan broker to manage a mortgage loan. The Abstract of the '435 Patent provides:

> The present invention includes a data processing system and method for a loan broker managing a mortgage loan originated by a loan originator for a loan customer. The loan originator is not the loan broker. The loan originator provides services necessary for the origination of the mortgage loan and not duplicative of services provided by the loan broker.

29. Without limitation as to claims to be asserted in this action and for exemplary purposes only, Independent Claim 1 of the '435 Patent reads:

> 1. A system, comprising:

       means for processing a mortgage loan for a loan customer by a loan originator at least partly operating a loan originator computer in coordination with a loan broker distinct from the loan originator, comprising:

       means for the loan originator providing services necessary for the origination of the mortgage loan and not duplicative of services provided by the loan broker, further comprising:

       means for transferring the loan application data for the loan customer from a loan originator computer to the loan broker computer operated by a loan broker;

       means for reviewing the loan application data to determine completeness; and

       means for completing the loan application whenever loan application data is incomplete by contacting the loan originator; and

       means for verifying the services are legally compliant with the guidelines of federal and state law.

30.     The '402 Patent generally relates to a specialized computer system and method for managing the origination of a mortgage loan by a non-loan broker.  The Abstract of the '402 Patent relevantly provides:

> An exemplary embodiment includes a data processing system and method for managing the origination of a mortgage loan by a loan originator in coordination with a loan broker for a loan customer.  The loan originator is not the loan broker.  The loan originator provides services necessary for the origination of the mortgage loan and not duplicative services provided by the loan broker.

31.     Without limitation as to claims to be asserted in this action and for exemplary purposes only, Independent Claim 18 of the '402 Patent reads:

> 18.  A system comprising:
> a graphical user interface adapted to receive loan application data from a loan originator regarding a loan customer;
> one or more storage devices adapted to store the loan application data;
> one or more data interfaces for receiving additional data, the receipt of the additional data coordinated by the loan originator; and
> a processor adapted to generate, based upon the loan application data and the additional data:
> a loan application; and
> an indication that the loan originator qualifies for a loan originator compensation amount under one or more of:
> a law regulating loan origination compensation,
> a regulation regulating loan origination compensation,
> a guideline relating to loan origination compensation, and
> a licensing requirement regulating loan origination compensation.

## V.     DEFENDANTS' INFRINGEMENT

32.    Caliber is a mortgage lender and agency direct seller/servicer. It services loans throughout the United States, has offices in Irving, Texas, and operates branch locations in Frisco, Texas and other Texas locations, Arizona, California, Colorado, Delaware, Florida, Georgia, Iowa, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Missouri, North Carolina, New Jersey, Nevada, Ohio, Oklahoma, Pennsylvania, Virginia, Washington, West Virginia, Wisconsin, and the District of Columbia.

33.    Caliber customers include Correspondent/Broker Partners ("loan originators"). A business-to-business interface system that Caliber offers to these loan originators is $H_2$Online, which is available at https://h20.caliberdirect.com. According to the Caliber website, "$H_2$Online is a single sign-on system that allows you to complete a loan from start to finish with a paperless process designed around today's mortgage banking industry."

34.    Upon information and belief, a loan originator may use the $H_2$Online system to, among other things, upload data for a loan application for a loan applicant. The loan originator may upload a form containing the data (such as a 1003 form), download an existing AUS case file (which includes data from a 1003 form, AUS findings and credit information), or the loan originator may enter in data manually. The stored data may be accessed or changed after it has been uploaded to the $H_2$Online system.

35.    Upon information and belief, the $H_2$Online system prompts the loan originator to also enter additional information. The additional information includes missing data that is required for the AUS or may be based on the selected loan product. For example, if the loan originator selects an "Agency 30yr Fixed" loan product, the $H_2$Online system may request information from the loan originator about whether the loan applicant is self-employed or has been in the applicant's line of work for less than two years.

36. Upon information and belief, other interfaces on the H$_2$Online system allow the loan originator to view application data, generate an application with the application data or to submit the application for review. The loan originator may also view the real-time status of loan applications and perform actions with the application, such as access documents, continue/edit the application, copy the application, create a second mortgage, extend an interest rate lock, order credit, request a relock of an interest rate, submit the application to AUS, submit the loan application to Caliber, view the AUS summary, view a credit summary, view a loan summary, view a transaction summary or withdraw the application.

37. Upon information and belief, the H$_2$Online system also generates disclosure statements that include information in order to facilitate payment of a fee to a loan originator. By way of example only, and upon information and belief, H$_2$Online determines if a particular loan application or portion thereof qualifies the loan originator to receive remuneration. The system also determines the amount of remuneration based on data supplied to the system for the loan application.

38. Through this Complaint, Caliber is now also on notice of the '841, '435 and '402 Patents. It is believed that Caliber will not discontinue use of the H$_2$Online system as a result of this notice.

39. Caliber has and is continuing to infringe upon patent eligible, valid and enforceable claims of the '841, '435 and '402 Patents in violation of 35 U.S.C. § 271(a), (b), and/or (c) by its use and loan originators' use of the H$_2$Online system.

40. Caliber has no reasonable basis for believing that use of the H$_2$Online system does not infringe at least one patent eligible, valid and enforceable claim of the '841, '435 and '402 Patents, making that infringement willful.

## VI. FIRST CLAIM FOR RELIEF
(Caliber's Patent Infringement – U.S. Patent No. 7,315,841)

41. iSource incorporates by reference each and every allegation in paragraphs 1 through 40 as though fully set forth herein.

42. As described herein, Caliber has and continues to violate 35 U.S.C. § 271 and is infringing one or more claims of the '841 Patent literally, or under the doctrine of equivalents, by manufacturing, making, using, selling or offering for sale, in the United States, including in the Eastern District of Texas, products embodying the patented inventions claimed in the '841 Patent without authority, and/or has induced and contributed to the direct infringement of the '841 Patent by others by actively instructing, assisting and/or encouraging others to practice one or more of the inventions claimed in the '841 Patent, including but not limited to the $H_2$Online system identified in the preceding paragraphs, which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

43. The actions of Caliber in infringing the '841 Patent have been, and are, willful, deliberate and/or in conscious disregard of iSource's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285 and entitling iSource to the award of its attorneys' fees.

44. iSource has been damaged as a result of the infringing conduct of Caliber. Caliber is thus liable to iSource in an amount that adequately compensates iSource for such infringement which cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## VII. SECOND CLAIM FOR RELIEF
(Caliber's Patent Infringement – U.S. Patent No. 7,340,435)

45. iSource incorporates by reference each and every allegation in paragraphs 1 through 44 as though fully set forth herein.

46. As described herein, Caliber has and continues to violate 35 U.S.C. § 271 and is infringing one or more claims of the '435 Patent literally, or under the doctrine of equivalents, by manufacturing, making, using, selling or offering for sale, in the United States, including in the Eastern District of Texas, products embodying the patented inventions claimed in the '435 Patent without authority, and/or has induced and contributed to the direct infringement of the '435 Patent by others by actively instructing, assisting and/or encouraging others to practice one or more of the inventions claimed in the '435 Patent, including but not limited to the $H_2$Online system identified in the preceding paragraphs, which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

47. The actions of Caliber in infringing the '435 Patent have been, and are, willful, deliberate and/or in conscious disregard of iSource's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285 and entitling iSource to the award of its attorneys' fees.

48. iSource has been damaged as a result of the infringing conduct of Caliber. Caliber is thus liable to iSource in an amount that adequately compensates iSource for such infringement which cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### VIII.   THIRD CLAIM FOR RELIEF
(Caliber's Patent Infringement – U.S. Patent No. 8,527,402)

49. iSource incorporates by reference each and every allegation in paragraphs 1 through 48 as though fully set forth herein.

50. As described herein, Caliber has and continues to violate 35 U.S.C. § 271 and is infringing one or more of the '402 Patent literally, or under the doctrine of equivalents, by manufacturing, making, using, selling or offering for sale, in the United States, including in the Eastern District of Texas, products embodying the patented inventions claimed in the '402 Patent

without authority, and/or has induced and contributed to the direct infringement of the '402 Patent by others by actively instructing, assisting and/or encouraging others to practice one or more of the inventions claimed in the '402 Patent, including but not limited to the H$_2$Online system identified in the preceding paragraphs, which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

51. The actions of Caliber in infringing the '402 Patent have been, and are, willful, deliberate and/or in conscious disregard of iSource's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285 and entitling iSource to the award of its attorneys' fees.

52. iSource has been damaged as a result of the infringing conduct of Caliber. Caliber is thus liable to iSource in an amount that adequately compensates iSource for such infringement which cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## IX. JURY DEMAND

iSource hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## X. PRAYER FOR RELIEF

iSource requests that the Court find in its favor and against Caliber, and grant iSource the following relief:

A. Judgment that one or more claims of the '841 Patent, the '435 Patent and/or the '402 Patent has been infringed, either literally, and/or under the doctrine of equivalents, by Caliber and/or by others whose infringement has been induced or contributed to by Caliber;

B. Judgment that Caliber account for and pay to iSource all damages to and costs incurred by iSource because of the infringing activities of Caliber and other conduct complained of herein in an amount not less than a reasonable royalty;

C. That such damages be trebled where allowed by law for the willful infringement by Caliber;

D. That iSource be granted pre-judgment and post-judgment interest on the damages caused to it by reason of the infringing activities of Caliber and other conduct complained of herein;

E. That this Court declare this an exceptional case and award iSource its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285;

F. Temporarily, preliminarily and permanently enjoin Caliber, its officers, directors, employees, agents, servants, and all persons in active concert with any of them, from infringing and/or inducing others to infringe and/or contributing to the infringement of the '841 Patent, the '435 Patent and/or the '402 Patent; and

G. That iSource be granted such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

Dated: September 11, 2014

By: /s/ George T. Scott
George T. Scott
TX Bar No. 24061276
**Sheridan Ross P.C.**
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
Email: jscott@sheridanross.com
      litigation@sheridanross.com

*Of Counsel:*

Robert R. Brunelli
CO Bar No. 20070
Benjamin B. Lieb
CO Bar No. 28724
**Sheridan Ross P.C.**
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
Email: rbrunelli@sheridanross.com
      blieb@sheridanross.com

**ATTORNEYS FOR PLAINTIFF ISOURCELOANS LLC**